DE BASAVILBASO (THIBAULT v.). See Case No. 13,881.

DEBLOIS (KROUSE v.). See Cases Nos. 7,-937 and 7,938.

DEBLOIS (TAYLOR v.). See Case No. 13,-790.

## Case No. 3,715.
### DE BRIMONT v. PENNIMAN.
[10 Blatchf. 436.] [1]

Circuit Court, S. D. New York. Feb. 24, 1873.

FOREIGN JUDGMENTS—WHEN ENFORCEABLE HERE
—DECREES BASED ON LOCAL STATUTES.

1. G., a French citizen, married, in France, the daughter of P., and of his wife, C., citizens of the United States. Such wife of G. died, leaving a child of such marriage. Under the statute law of France, providing, that a father-in-law and a mother-in-law must make an allowance to a son-in-law who is in need, so long as a child of the marriage is living, G. afterwards obtained, in a court of France, a judgment or decree against P. and C., then residing in France, in an action in which they were served with process and appeared, requiring P. and C. to pay him a certain sum per year, in monthly payments, in advance, one-third of it to be for his use, and two-thirds of it for the use of the child. G. brought an action of debt, on the judgment or decree, in this court, against P. and C., to recover the amount of the decreed payment for two years and seven months: *Held*, that the suit could not be maintained.

[Cited in Hilton v. Guyott, 42 Fed. 255.]

2. The laws of France upon which such decree was made, and such decree founded thereon, are local in their nature and operation. They are designed to regulate the domestic relations of those who reside there, and to protect the public against pauperism. They have no extra-territorial significance, but must be executed upon persons and property within their jurisdiction.

[Cited in Hohner v. Gratz, 50 Fed. 370.]

3. Such orders of the French tribunals are in this respect like orders of filiation, and orders made, under local statutes, to guard against pauperism, and in the nature of local police regulations, and are not founded upon principles which, irrespective of local statutes, are of universal acceptation, like judgments for a sum certain, founded upon contracts or other recognized private rights.

[This was a suit at law by Gaston De Brimont against James F. Penniman, impleaded with Cornelia J. Penniman, his wife.]

George M. Van Hosen, for plaintiff.

Coudert Bros., for defendants.

WOODRUFF, Circuit Judge. This is an action of debt. The declaration contains two counts. The first is founded on an alleged judgment or decree pronounced in the then empire of France; the other count is debt on simple contract, for interest alleged to be due to the plaintiff, for the forbearance of moneys due and owing by the defendants to the plaintiff. The first count only is demurred to. That count alleges, that the plaintiff is an alien and a citizen of the French republic, and that the defendants are

citizens of the United States and of the state of New York; that, on the 16th of March, 1868, at Paris, in the then empire of France, the plaintiff intermarried with the daughter of the defendants; that a child of the marriage was born, who is still living; and that, on the 7th of February, 1869, such daughter, (the wife of the plaintiff,) died. The declaration then sets out certain articles of the Code Civil of France, which provide, that children must make an allowance to their father and mother, and other ancestors, who are in need; that sons-in-law and daughters-in-law must, also, in like circumstances, make an allowance to their fathers-in-law and mothers-in-law, but this obligation ceases, first, when the mother-in-law contracts a new marriage, and, second, when that one of the married couple through whom the relation of affinity exists is dead and the children born of such couple are also dead; that the obligations springing from the foregoing provisions are reciprocal; and that an allowance is only to be granted in proportion to the necessities of him who claims, and to the means of him who is bound to pay. It is next averred, that at and prior to the said intermarriage, and at the time of the rendition of the judgment and decree next mentioned, and subsequently to such decree, the defendants were residents of the empire of France, had the benefit of its laws and owed to it a temporary allegiance; that, on the 14th of August, 1869, the civil tribunal, (particularly mentioned,) at Paris, rendered and pronounced judgment, in an action there pending, wherein the said plaintiff was plaintiff and the said defendants were defendants, brought by the plaintiff, to obtain an allowance from the defendants, under the said articles of the Code Civil, that the defendants, jointly and severally, pay to him 18,000 francs per year, in equal monthly payments, in advance, such payments to be made from the time that such allowance was first demanded, and should be 6,000 francs for the use of said plaintiff, and 12,000 francs for the use of the said child of the plaintiff and of said daughter of the defendants; that the defendants were both duly served with process in said action and appeared therein; that the said civil tribunal was a court of the empire of France, and had jurisdiction of the subject-matter of the action and of the parties; that the defendants appealed from the said judgment to the court imperial of Paris; that such appeal was there prosecuted by the plaintiff and the defendants, and, on the 5th of May, 1870, such appellate court adjudged and decreed, that the before-mentioned judgment be affirmed, in respect of the right of the plaintiff to an allowance, and in respect of the amount, to wit, 18,000 francs per year, and of the appropriation thereof by the plaintiff, to wit, 6,000 francs to the use of the plaintiff and 12,000 thereof to the use of the said child, and in respect of

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

the times and manner in which it should be paid to the plaintiff, to wit, in equal monthly payments, in advance, and did adjudge and decree, that the defendants, jointly and severally, pay to the plaintiff the said sum, and pay the same from the day of the decease of their said daughter, February 7th, 1869, as appears, &c., by the records and proceedings of said court, now remaining of record; that the said judgment and decree of the court imperial is final and conclusive, and is in full force, not reversed or annulled or satisfied, &c.; that such court is a court of general jurisdiction, and had jurisdiction of the subject-matter and of the parties; and that the plaintiff has not yet obtained satisfaction of the said judgment, whereby an action hath accrued to him to have and demand of the defendants, jointly and severally, the sum of $10,200, being the value, in currency of the United States, of the sum of 48,000 francs, in which said last-mentioned sum the defendants are, jointly and severally, indebted to the plaintiff, by reason of the said judgment, for the time beginning the 7th of February, 1869, and ending the 7th of November, 1871.

The defendant James F. Penniman demurs to this count, upon various grounds, which I do not think it necessary to enumerate. They were urged on the argument, and, by not noticing many of them further, I am not to be deemed to affirm the sufficiency of the declaration in respect thereto. It is sufficient that the principal question is decided. That question is, whether an action of debt will lie in this court, upon such a decree of a court in France, made against citizens of the United States, husband and wife, temporarily resident in that empire.

It may not be irrelevant to state, that, besides the articles of the French Code inserted in the declaration, the counsel for the plaintiff admitted, on the argument, and he has stated on his brief, that it is provided, by other articles of that Code, that the duty to make the allowance which the decree in question provides, ceases whenever the claimant obtains a fortune sufficient for his own support, or the party by whom the payment is to be made becomes unable to pay, or cannot pay without withdrawing means which are required for his own necessities.

The question is novel. No case has been cited by counsel, in which a foreign judgment of such a nature has been the subject of an action in this country, or in England; and no such case has fallen under my observation. Cases are numerous in which foreign judgments for the recovery of a definite sum of money have been sued upon; and the question has been largely discussed, whether such judgments are conclusive, or are merely prima facie, evidence of the debt which they award, and whether, and to what extent, the subject-matter is open to inquiry and proofs, on the original merits. Those cases are not controverted by the counsel for the defend-

ants, but they are deemed not to apply to such a decree as is set out in this declaration. Cases are, also, numerous, in which the force and effect of judgments and decrees in the courts of one of the states of the United States are under consideration in the courts of other of the states, or in the federal courts. Those cases are not deemed to apply to the present, because, the constitution of the United States operates, as between the states, to give them an efficiency not due to a foreign judgment or decree.

In determining the precise question, whether, upon the facts stated in the declaration, the plaintiff shows a cause of action, it may not be material to decide, whether such a judgment is, in this court, to be regarded as conclusive, or only prima facie, evidence of the indebtedness claimed by the plaintiff; for, if it be either, then, in connection with the allegations showing the law and the relationship of the parties, a demurrer founded in denial of legal liability could not, probably, be sustained. The cases, therefore, which discuss that distinction need not be considered.

The broad question, whether a citizen of the United States, whose daughter marries in France, can be prosecuted here upon a decree of a French court, requiring him and his wife to pay an annuity for the support of their son-in-law, is prior to the inquiry last above referred to. The subject pertains to the domestic relations of our own citizens, and the duties and obligations resulting therefrom; and the decree in question proceeds upon the declaration of an obligation not in conformity with our laws, not known to the common law, and upon the continuance of the obligation itself after the relationship out of which it is deemed to have arisen has ceased by the death of the person through whom the affinity was traced. The nearest analogy to a decree of the nature in question, to which my attention is called, is a decree for alimony, where a divorce, total or partial, has been granted; but, the only cases in which such a decree has been held to support an action in another jurisdiction are under the influence of the constitution of the United States, and, by force of that constitution, it was held that a suit would lie, in a court of chancery, to compel the performance of the decree. Barber v. Barber, 21 How. [62 U. S.] 582.

It is not irrelevant to a consideration of the nature of the decree in question, to say, that it does not proceed upon the rule of obligation recognized by all civilized nations, that the parent shall support his children during minority, which involves, also, the correlative right to the services of those children while thus supported. Such an obligation has no relation to the case under consideration. Whatever obligation or duty lies at the foundation of the claim of this plaintiff is the creature of positive statute, framed for the people of France, to regulate their domestic concerns, protect the public, and guard against pauperism and its evils. Statutes in some re-

spects similar are found in England, and in most, if not all, of the states of this country. The duty of parents and grandparents, and, reciprocally, of children and grandchildren, when of sufficient ability, to provide for the necessary support of those relatives, and prevent their becoming a charge to the public, is declared and is enforced. Such regulations are local in their nature, and in their application, and so are the orders for their enforcement. They are a part of a local system, to provide for paupers, and to relieve the public from their maintenance, when they have relatives within certain designated degrees, who are of ability to support them. Such orders are subject to modification and adjustment, as circumstances may require, in the states and tribunals wherein they are made. Apart from questions growing out of the federal constitution, they can only be enforced in the states where they are made. Orders of filiation are of a similar character. They are mainly for the protection of the public, founded on local statutes, and are in the nature of domestic police regulations. The provisions of the Code of France, set out in the declaration, and the decree of the courts founded thereon, are of the like nature. It would seem, that the policy of that country, as viewed by its courts, does not require that the son-in-law or other claimant shall himself do anything for his own support, but that he is to be supported in idleness. That is probably not a matter of importance to the present inquiry, except so far as it may tend to show that the judgment or decree is hostile to the policy of this country, and in conflict with the only ground upon which orders arbitrarily imposing upon one the burthen of supporting another would be tolerated. The principle upon which foreign judgments receive any recognition in our courts, is one of comity. It does not require, but rather forbids it, when such a recognition works a direct violation of the policy of our laws, and does violence to what we deem the rights of our own citizens. The courts of this country will be slow to hold, that, whenever an American citizen shall visit France, and reside there temporarily, with his family, his son or his daughter, by a rash or imprudent marriage, can cast upon the parents, mother as well as father, the perpetual burthen of an annuity, for the support of the wife or husband. So long as such residence continues, no doubt, the parents must submit to the laws of France. The orders of her courts may be enforced against them, as those laws may prescribe; but, in a matter of this kind, those laws must be executed there, and such decrees can have, and ought to have, no extraterritorial significance. They rest upon no principles of universal acceptation, like the

obligation of contracts, or the protection of generally recognized, private, personal rights. No disposition to deal with foreign judgments, so as to promote the ends of justice, demands that such decrees should be arbitrarily enforced in our courts.

Beyond these considerations, I think it plain, upon the face of the declaration, and, especially where the other admitted provisions of the French Code (stated by the counsel) are brought into view, that the decree itself should be deemed, and would, in France itself, be deemed, local and provisional, and designed to be carried into effect there, and only upon persons and property found there. Their laws contemplate the supervisory control and direction of their courts over the parties, in all the changes which may occur in their relative pecuniary conditions. The decree in question prescribes a temporary rule of allowance and provision for support, subject to modification according to circumstances. There is no award of any sum certain, to be presently paid, and the declaration does not show that any sum whatever could even there be collected, without a further application to the court, for some process or other award of means by which some definite amount shall be collected. Continuing necessity, on the one hand, and continuing ability, on the other, are assumed for the future, and the absence of either makes even the decreed allowance to cease. Without assuming to say that the father-in-law and mother-in-law, if still in France, would not have the onus of showing that circumstances had changed, and of procuring a modification of the decree thereupon, these observations bear pertinently on the nature of the decree itself, and with great force on the question how such decree is to be treated in our own courts.

In harmony with what has been already suggested, I add, that we cannot hold that such decree is final, operative and binding unless and until the defendants go to France and there appeal to the discretion of their courts to modify the decree according to the new circumstances which may arise; and yet, the claim here made, in regard to the effect of the decree in our courts, would require us to give judgment in accordance therewith, even though the defendants offered to prove, and could prove, that the plaintiff had come to a princely inheritance.

Without, therefore, considering the other alleged imperfections in the declaration, or the peculiarity of a decree which charges the wife of the demurrant personally, or the want of any averment that she has any separate estate which can be charged by this court, I am of opinion, that the defendant James F. Penniman is entitled to judgment upon his demurrer.