175. That this contract was substantially performed is established by the evidence. If a party willfully and intentionally grossly exaggerates the amount due, so that the court should conclude that it was done for the purpose of enforcing a false and fictitious demand, such exaggeration might be sufficient to destroy the validity of the notice of lien. Aeschlimann v. Presbyterian Hospital, 165 N. Y. 296, 59 N. E. 148, 80 Am. St. Rep. 723. But a mere innocent mistake, not a willfully and intentionally false statement, does not have this effect. American Mortgage Co. v. Butler, 36 Misc. Rep. 253, 73 N. Y. Supp. 334. There is no evidence in this case of any bad faith on the part of the lienor nor any willful intention to present and attempt to enforce an exaggerated claim against the property. In view of the fact that the labor yet to be performed was comparatively insignificant, and that the lienor might and probably would upon request have performed that labor, I do not think that a mere error in stating that the whole $2,000 was due, when according to his claim there was only $1,909 due, would justify the court in withholding from him the right to enforce his lien against the premises described in the notice thereof.

There must be judgment for the plaintiffs for the sum of $1,880, with interest from the 4th day of December, 1903, and for a foreclosure of the plaintiffs' lien against the premises described therein for that amount, with the costs of this action.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, HOOKER, GAYNOR, and MILLER, JJ.

Clark B. Augustine (Walter B. Hopping, on the brief), for appellants. Joseph J. Speth, for respondents.

PER CURIAM. Judgment affirmed, with costs, upon the opinion of Mr. Justice Burr at Special Term.

HIRSCHBERG, P. J., not voting.

---

In re NEIDNIG'S ESTATE.

(Supreme Court, Appellate Division, Second Department.   January 17, 1908.)

JUDGMENT—FOREIGN—CREDIT—POLICE REGULATION.

   A judgment, adjudication, or determination in a foreign country in the nature of a police regulation of that country has no extraterritorial force as a judgment, and hence a determination in a foreign bastardy proceeding is not within the rule requiring full faith and credit to be given to foreign judgments.

Appeal from Surrogate's Court, Kings County.

In the matter of the estate of Andrew Neidnig, deceased. From an order (107 N. Y. Supp. 590) denying an application for a commission to take foreign testimony, Andrew Neidnig, administrator, appeals. Reversed and remitted.

Argued before WOODWARD, JENKS, GAYNOR, RICH, and MILLER, JJ.

Edmund F. Driggs, for appellant.
Robert S. Kristeller (Hersey Egginton, on the brief), for respondents.

JENKS, J. This is an appeal from an order of the Surrogate's Court of Kings county denying the application of an administrator for a commission to take foreign testimony in proceedings brought to

remove him, on the ground that he is not the son of the intestate, but
a bastard. The application sought the testimony of the reputed grand-
mother, of the reputed aunt of the administrator, and of the burgo-
master of the town where the administrator was born, "or any other
to be named in the order." Proof was submitted in opposition to the
application, consisting of transcripts from the records of the Royal
Court at Hassfurt, in the Matter of the Guardianship of Johann Richard
Sauerbrey of Kleinmunster. The learned surrogate denied the ap-
plication upon the grounds that a decree of a foreign court having ju-
risdiction of the cause and the parties is entitled to full credence here,
and that, even if this decree could be assailed for fraud or jurisdic-
tional defects, that step could only be taken by one aggrieved, whereas,
in this case the administrator had benefited by the fraud, if any. As
to the other proposed witnesses the learned surrogate concluded that
their testimony was not competent.

But there is a well-recognized exception to the rule that requires
full faith and credit to be given to foreign judgments. When the
"judgment," adjudication, or determination is in the nature of a police
regulation of the country wherein it was made, it has no extraterri-
torial force as a judgment. 2 Black on Judgments (2d Ed.) § 841;
Freeman on Judgments, § 597; 23 Cyc. 1610; De Brimont v. Penni-
man, 10 Blatchf. 436, Fed. Cas. No. 3,715. The "judgment" relied
upon in this proceeding is the result of a proceeding of filiation in the
Royal Court at Hassfurt. The records submitted show that the mother
of this administrator, while she was single, brought proceedings under
the guardianship of the mayor of Kleinmunster for the "reimburse-
ment of the spoliation of her virgin honor," for confinement and bap-
tism expenses, and for the support of this administrator until he was
21, against J. M. Jacob, on the ground that he was the father of this
child. Jacob when brought in denied the paternity, and resisted the
application. Legal proceedings were authorized against him by the
mother and the mayor as guardian within four weeks after October 19,
1881. The record of the proceedings shows nothing further, save that
on November 7, 1881, the mayor presented an agreement for approval
between Jacob and the woman, whereby Jacob paid 800 marks to the
guardian, the capital sum to be invested and the interest to be paid to
the woman, who renounced all further claims. This agreement was
approved. In 1902 the illegitimate child arrived at maturity, applied
for the sum thus invested, and received it.

I think that the "judgment" in that proceeding was nothing more
than the determination of a bastardy proceeding in the exercise of the
police regulation of the country. Proceedings of the same general
character in this state are regarded as quasi criminal, not civil. Peo-
ple v. Colegrove, 63 Hun, 635, 18 N. Y. Supp. 370; People ex rel.
Fuller v. Carney, 29 Hun, 47.

I think that the order should be reversed, and the proceeding remitted
to the Surrogate's Court for a hearing upon the merits. All concur.